# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CASE NO.: 8:23-cr-32-KKM-TGW |
| ROBERT BIRCHUM, | |
| Defendant | |

## DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE AND VARIANCE

TO THE HONORABLE JUDGE KATHRYN KIMBALL MIZELLE:

*Introduction*

Mr. Birchum appears before the Court as a decorated combat veteran of the United States Air Force, having served our country for more than 29 years as both an enlisted airman and as a commissioned officer.  As an intelligence officer assigned to various special operations units, he completed several deployments to Iraq and Afghanistan in direct support of combat operations.  As demonstrated in Exhibit 1 to this memorandum, the Air Force recognized Mr. Birchum's service during war by awarding numerous medals and decorations including the Bronze Star, three Meritorious Service Medals, the Joint Service Commendation Medal, two Air Force Commendation Medals, and the Air Force Achievement Medal.

Sadly, like too many of our brave service men and women, Mr. Birchum returned from war with the debilitating scars of his experiences overseas.  Mr. Birchum was officially diagnosed with Post-Traumatic Stress Disorder (PTSD) and major depressive disorder (MDD) in 2009.  Despite this diagnosis and documented behavior, including twice being admitted under

the Baker Act, suicidal ideations and two actual attempts, multiple inpatient hospitalizations, and being prescribed psychotropic medications, all of which should have been highly concerning to Mr. Birchum's superiors, the Air Force saw fit to deploy Mr. Birchum to a combat zone a final time in 2016. This one-year deployment was to Afghanistan in support of counter-insurgent operations. Mr. Birchum fortunately now receives specialized care from the Veteran's Administration for his service-connected disabilities but continues to struggle with the impact of his service on a daily basis.

Mr. Birchum recognizes that his record of prior service is in no way an excuse for his current situation and he does not offer it to justify the extremely poor care and attention paid to his responsibilities that led him to be before the Court to be sentenced. He further recognizes that his poor decisions have jeopardized his very freedom that he fought to protect for others and have risked yet another separation from his family. For the reasons more fully discussed below, the defense respectfully submits that a probationary sentence and a fine is a sufficient and proportional punishment for his offense in this case.

*Application of 18 U.S.C. § 3553(a) Factors and Relevant Guidelines*

1.     History and Characteristics of the Defendant

a.  Childhood to Career Military Officer

Mr. Birchum was born the youngest of four siblings in the border-town of Eagle Pass, Texas, in 1968. His single mother raised him while his grandmother raised his older sisters and brother. Mr. Birchum's father was never involved in his son's life and his mother abused alcohol and battled mental health issues her whole life. Both his mother and one of her boyfriends abused Mr. Birchum as a child. In high school, Mr. Birchum, then known by his given name of Roberto Lorenzo Rodriguez, was subjected to bullying and physical attacks based on his

perceived status of not being of true Hispanic origin in a dominantly Hispanic community. He found an outlet in the Junior ROTC program and, after graduation, he volunteered to enlist in the United States Air Force. He served over seven years as an information management specialist, receiving the first of his honorable discharges in 1994. During this enlistment, Mr. Birchum deployed to Afghanistan in support of Operation Desert Storm and received his first Air Force Commendation Medal and Air Force Achievement Medal. His work on airborne surveillance programs during his enlistment sparked the interest in the intelligence community that would eventually lead to the remainder of his career in the military.

After his initial release from active duty, Mr. Birchum was nominated by the Air Force to attend Texas Tech University as a ROTC student. He graduated with a bachelor's degree in Political Science in 1996 and was commissioned as an officer in the Air Force shortly thereafter. Thus continued Mr. Birchum's career of military service to this country. Mr. Birchum earned two postgraduate degrees over the course of his career and served with distinction as an intelligence specialist for over 20 years. Mr. Birchum was consistently ranked at the very top of his peers in his performance evaluations and selected for continually increasing positions of responsibility. The evaluations in Exhibit 1 describe Mr. Birchum's performance as "superb" and "brilliant." Another superior expressed his belief that Mr. Birchum was the top air intelligence expert at the Joint Special Operations Command. Yet another observed that Mr. Birchum was the number one intelligence officer the superior had observed over a 17-year career. During one deployment, intelligence assessments produced by Mr. Birchum supported over 40 strikes against foreign terror networks resulting in the capture or killing of over 800 enemy combatants intent on killing Americans. In total, Mr. Birchum has deployed overseas at least six times for an aggregate boots-on-ground time of over two years.

Mr. Birchum reported for his next duty assignment at the Pentagon in July 2001. He was in the building when terrorists crashed a civilian jetliner into the building, claiming the lives of nearly two hundred people. As with all things post-9/11, the events of that day transformed life as we know it and particularly the arc of Mr. Birchum's career. Operational tempos rapidly scaled up and the need for timely, actionable intelligence was an urgent national priority. Mr. Birchum's knowledge and experience in the intelligence world would place him in positions to assist in accomplishing the objectives of punishing those responsible for the attacks and preventing future attacks. Despite its tragic start, this tour of duty was not without the positive as Mr. Birchum met his future wife, Cristina, during this assignment.

One particular period of Mr. Birchum's post-9/11 career deserves special attention although the specifics of the operation remain classified. Unclassified open-source articles, however, shed some light on the actions of Mr. Birchum and a team of special operators that led to Mr. Birchum receiving the Bronze Star. The Bronze Star is award to persons who distinguish themselves by heroic or meritorious achievement or service in connection with military operations against an armed enemy. From November 2006 until June 2007, then-Major Birchum deployed with a joint task force in support of Operation Iraqi Freedom. In the winter of 2007, the U.S. military observed a spike in the number of fatal surface attacks on helicopters operating in Iraq. Six military and two private contractor helicopters were shot down, killing 23 U.S. service members. Over a period of several months, Major Birchum and the operations team identified and tracked the insurgents responsible for the attacks and eliminated the threat. The unclassified award, which does not contain mission-specific details, was signed by Lieutenant General Stanley McChrystal, U.S. Army, the then-Commanding General of the Joint Special Operations Command.

Although not surprising, it is worth noting that Mr. Birchum has no criminal history aside from the instant offense. Mr. Birchum also took early responsibility for his actions in this case, waived indictment, and pled guilty pursuant to an Information. He cooperated with Air Force authorities when questioned about this offense and submitted to a proffer session with the government, providing detailed information about his offense. Mr. Birchum's actions demonstrate his acceptance of responsibility and his true remorse for his conduct and his substantial attempt to make amends for his transgressions in mishandling the classified information in his possession.

### b. Physical, Mental, and Emotional Health

The United States Sentencing Guidelines recognize military service, individually or in combination with other characteristics, as grounds for a possible departure under the Guidelines. U.S.S.G. § 5H1.11. Mr. Birchum is a veteran who was both wounded and decorated for his service and active participation in several combat deployments. The United States Supreme Court has recognized the importance of military service as a mitigating factor in according leniency to veterans, especially for those who fought on the front lines.[1] The United States currently has approximately 1.2 million active duty members today, representing less than one-half of one percent of the total population. According to the Census Bureau, only about seven percent of the population has ever served in the military in some capacity. Obviously, considering the relevance of military service in Federal sentencing involves many factors, as no two individual member's service histories will be identical. A member may have served entirely with the United States in administrative or clerical positions while another member may have served in harsh and dangerous combat positions overseas.

---

[1] *Porter v. McCollum*, 130 S.Ct. 447, 454 (2009).

It is well recognized that the stress of military service and combat can affect the health of service members in many ways. Exhibit 2 chronicles the physical, mental, and emotional toll Mr. Birchum's service has had and continues to have on his personal life and his relationships. He is currently rated 100% disabled by the Veteran's Administration for service-connected disabilities. The same disabilities formed the basis for his medical retirement from the Air Force. In 2017, a medical evaluation board was ordered to conduct an evaluation of Mr. Birchum's fitness for continued active-duty service. The board concluded that Mr. Birchum was not fit for continued service and recommended his medical retirement from the service. The board noted the severe symptoms of depression, anger, and PTSD were connected to multiple episodes of combat trauma throughout his military career and childhood trauma. The report also notes the impact of the disabilities on Mr. Birchum's personal life from marital stress and the use of alcohol as a coping mechanism.

Whether a veteran suffers from a mental or emotional condition that is traceable to their military service is a relevant consideration in sentencing. As noted above, Mr. Birchum's PTSD and depressive disorder diagnoses date back to 2009 and have been confirmed several times since based on clinical reports, observations, and objective testing. According to the National Institute of Mental Health, PTSD is an anxiety disorder that some people get after seeing or living through a dangerous event.[2] Symptoms can include re-experiencing traumatic events in the form of nightmares or flashbacks, numbing of feelings, and emotional withdrawal. Mr. Birchum has exhibited many of these symptoms as documented by his family and health-care providers. As Ms. Birchum notes in her letter to the Court, she has observed first-hand the

---

[2] National Institute of Mental Health, Post-Traumatic Stress Disorder, https://www.nimh.nih.gov/health/topics/post-traumatic-stress-disorder-ptsd, viewed May 3, 2023.

effects losing teammates killed in action had on her husband, including crawling on the floor at night and the attempted suicides and hospitalizations.

The length of time for this case to get to this point has further contributed to Mr. Birchum's mental health struggles as he has lived with the additional stressor of a federal criminal investigation for over six years now. Mr. Birchum was first informed of the Air Force's investigation into his handling of classified material back in 2017 while he was deployed to Afghanistan. He was returned early from theatre to deal with the investigation. All investigative steps were completed early in 2017 and the Air Force was fully aware of all of the facts of the case. As a result of the Air Force's investigation into Mr. Birchum. Mr. Birchum's wife, a civilian intelligence analyst for the government, was suspended without pay for over two years and her security clearance was also suspended. The Air Force declined the option of pursuing a criminal case at court-martial against Mr. Birchum and administratively censured him by issuing him a letter of reprimand. In 2018, Mr. Birchum was medically retired from the Air Force with an Honorable discharge at his present rank of Lieutenant Colonel.

The letters contained in Exhibit 3 provide a picture of not only Mr. Birchum's personal character but of his work ethic and professional performance in uniform. Mr. Birchum's step-daughter, whom he raised as his own child along with her three sisters, describes him as dependable, encouraging, and supportive. Mr. Birchum used his GI-Bill to pay for her education and training. Two of Mr. Birchum's former supervisors and colleagues describe him as a smart, capable, and hard-working officer who always went the extra-mile to accomplish the mission.

2. Nature and Circumstances of the Offense and the Need to Avoid Unwarranted Sentencing Disparities

One must not look very hard to find the numerous news articles, internet opinions, and television coverage of the spate of recent cases involving allegations of mishandling classified

information.  Among others, Mr. Birchum's case now shares a stage with the current President of the United States, the former President and Vice-President of the United States, and a former Secretary of State.  Looking a bit further back in time, one can see examples of other high-level government executives involved in the same type of offenses, including a former national security adviser who pled guilty to knowingly removing classified documents from the National Archives and a former CIA director and retired four-star general who pled guilty to sharing classified documents with his biographer and mistress.  Both the former national security adviser and the former CIA director were sentenced to pay a fine and probation.  No charges have been bought against any of the other individuals noted above.  Similar cases involving lower-level government employees that did result in prison sentences typically involved attempts to obstruct the investigation or actual dissemination of the information or both.

Mr. Birchum was charged with and pled guilty to wrongfully retaining national defense information between August of 2008 until January of 2017.  Mr. Birchum never transferred or disclosed any of the information to anyone else.  Air Force investigators retrieved a total of 338 documents, consisting of hard copies and digital files, from Mr. Birchum's possession that contained classified markings.  The presentence investigation report reveals that the documents were saved between 2002 and 2008.  PSR, para. 22.  Military records show that during this timeframe, Mr. Birchum was either a student at a post-graduate intelligence institution or stationed at the Pentagon or Fort Bragg, North Carolina, in combat intelligence positions.  There is no indication or evidence that Mr. Birchum possessed these documents with any nefarious intent to cause harm to our national security, result in personal financial gain, or injure this country's standing in the world.  Instead, the evidence in this case overwhelmingly shows that while Mr. Birchum demonstrated exceptionally poor adherence to his obligation to safe-guard

the secrets he was entrusted with, he did not keep classified material for personal gain or with malicious intent to harm the country.

The PSR properly identifies the lack of a distinction in the guidelines between someone who willfully transmits or communicates classified material from someone who merely possesses and retains that information without authorization. The applicable guideline in Mr. Birchum's case, U.S.S.G. § 2M3.3, makes no such distinction and assigns a base offense level of 29 if the information is classified as top secret. The other espionage related guidelines assign higher base offense levels for cases involving the gathering or transmission of such information to foreign governments.

3.  Seriousness of the Offense; Promote Respect for the Law; Just Punishment; Adequate Deterrence; and Need to Protect the Public

The guideline range for Mr. Birchum is more than is necessary considering the seriousness of the offense and the need to promote respect for the law and ensure adequate punishment for the offense. Mr. Birchum makes no excuses for his conduct and certainly admits that the proper handling of classified material is vital to our nation's security. In this case, however, incarceration is not necessary to deter Mr. Birchum from any future criminal activity or to protect the public. In the over six years since he was first questioned about this offense, Mr. Birchum has retired from the Air Force and has demonstrated that he has the ability and willingness to be a lawful and productive member of society. Mr. Birchum is no longer a government employee with any access to classified material and all materials were collected and are in the possession of the government. Mr. Birchum has worked hard to provide for his family and continues to address his mental health issues. He obviously has the full support of his family, friends, co-workers and community to assist him with his continued rehabilitation and recovery from this situation.

*Conclusion*

Mr. Birchum understands there must be consequences for his conduct and he stands willing to accept whatever that consequence will be. What he and his family respectfully request, however, is that his conduct be considered in the context of his prior service to his country, his lack of any malicious intent, and his sincere remorse and commitment to his continued rehabilitation and treatment. A probationary sentence will ensure adequate continued supervision to ensure this success and is a sufficient but not greater than necessary sentence to comply with the statutory directives set forth in 18 U.S.C. § 3553.

Respectfully Submitted,

**THE LAW OFFICE OF ERIC ROPER, P.A.**


/s/ *C. Eric Roper*
C. Eric Roper
Florida State Bar Number: 84619
301 W. Bay Street, Suite 1413
Jacksonville, FL 32202
Telephone: (904) 354-8775
Fax: (904) 779-3247
E-mail: eric@ericroperlaw.com
Attorney for Mr. Birchum

**CERTIFICATE OF SERVICE**

I certify that on the 9th day of May, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system that will send a notice of electronic filing to the counsel of record.

/s/ C. Eric Roper
C. Eric Roper