Exhibit 2

## VA Admissions And Discharges

| | |
|---|---|
| Source: | VA |
| Last Updated: | 01 Oct 2021 @ 1745 |
| Sorted by: | Admission Date/Time (Descending) |

Discharge summaries are available thirty-six (36) hours after they are completed. If you have any questions about your information please visit the FAQs or contact your VA health care team.

| | |
|---|---|
| Admission Date: | 24 Aug 2021 @ 2112 |
| Location: | Tampa FL VAMC |
| Admitting Physician: | ███████ |
| Discharge Date: | 03 Sep 2021 @ 1200 |
| Discharge Physician: | ███████ |

### Discharge Summary

LOCAL TITLE: Discharge Summary
STANDARD TITLE: DISCHARGE SUMMARY
 DICT DATE: SEP 03, 2021@11:52    ENTRY DATE: SEP 03, 2021@11:52:16
 DICTATED BY: ███████          ATTENDING: ███████
 URGENCY: routine         STATUS: COMPLETED

DATE OF ADMISSION: Aug 24,2021
DATE OF DISCHARGE: Sep 3,2021

ADMITTING DIAGNOSIS: "SUICIDAL IDEATION"

DISCHARGE DIAGNOSIS:
 Diagnoses (Based on DSM-5 Criteria)
     MDD, recurrent, severe
     Alcohol use disorder, moderate
     PTSD, chronic

Other Pertinent Medical Diagnoses
     Stage IIIa CKD
     Mixed hyperlipidemia
     OSA (not using CPAP)
     Chronic pain
     OA

 Notifications for Mental Health outpatient provider:
1. Patient re-started on previous dose of Venlafaxine 225mg Qdaily. Propranolol 60mg was added per PCP recommendations to address elevated BP. BPs stable inpatient.
2. Patient started on gabapentin for neuropathic pain. Discharged on gabapentin 300mg QAM and 600mg QPM. Please note max recommended total daily dose based on patient's kidney function is 900mg per pharmacy.
3. Patient agreeable to participating in outpatient psychotherapy, plans to see psychology at PTSD clinic, also interested in marital counseling



**DEPARTMENT OF VETERANS AFFAIRS**
**810 Vermont Ave NW**
**Washington, D.C. 20420**

September 16, 2019

Robert L

In Reply Refer to:
xxx-xx-7319
27/eBenefits

Dear Mr. Birchum:

This letter is a summary of benefits you currently receive from the Department of Veterans Affairs (VA). We are providing this letter to disabled Veterans to use in applying for benefits such as state or local property or vehicle tax relief, civil service preference, to obtain housing entitlements, free or reduced state park annual memberships, or any other program or entitlement in which verification of VA benefits is required. Please safeguard this important document. This letter is considered an official record of your VA entitlement.

Our records contain the following information:

## Personal Claim Information

Your VA claim number is: xxx-xx-7319

You are the Veteran.

## Military Information

Your most recent, verified periods of service (up to three) include:

| Branch of Service | Character of Service | Entered Active Duty | Released/Discharged |
|---|---|---|---|
| Air Force | Honorable | July 02, 1986 | January 18, 1994 |
| Air Force | Honorable | May 15, 1996 | July 28, 2018 |

(There may be additional periods of service not listed above.)

## VA Benefit Information

| | |
|---|---|
| **You have one or more service-connected disabilities:** | Yes |
| **Your combined service-connected evaluation is:** | 100% |
| **You are in receipt of special monthly compensation due to the type and severity of your service-connected disabilities:** | Yes |

You should contact your state or local office of Veterans' affairs for information on any tax, license, or fee-related benefits for which you may be eligible. State offices of Veterans' affairs are available at http://www.va.gov/statedva.htm.

## How You Can Contact Us

- If you need general information about benefits and eligibility, please visit us at https://www.ebenefits.va.gov or http://www.va.gov.
- Call us at 1-800-827-1000. If you use a Telecommunications Device for the Deaf (TDD), the number is 1-800-829-4833.
- Ask a question on the Internet at https://iris.custhelp.va.gov.

Sincerely,


Duane A. Honeycutt
Acting Executive Director
Benefits Assistance Service



MEDICAL EVALUATION BOARD NARRATIVE SUMMARY

IDENTIFYING DATA:
    Name: Birchum, Robert    SSN: 20/7319
    Age: 48    Marital Status: Married    Race: Latino
    Military Status/Branch: ADAF    Rank: LTC    Years of Service: 28 years

"Prior to interviewing the service member (SM), Provider discussed the purpose of the evaluation as a fitness for duty assessment, the limits of confidentiality, that they WOULD be his treating physician, and that a written report would be submitted to the MEB/PEB to determine fitness for military duty. SM expressed understanding of these issues and agreed to proceed. Sources of information include: AHLTA notes, mental health records, psychological testing and SM's direct input, that were deemed sufficient to make conclusions with reasonable clinical certainty".

ADVISEMENT AND WARNING
    Reviewed limits of confidentiality and clinic policies as outlined in the patient information sheet; patient expressed understanding and agreed to voluntarily proceed with the evaluation.

REFERRAL SOURCE AND CHIEF COMPLAINT:
    Pt was referred by his on-base psychiatrist of many years, Dr. Altagracia Otero, on 25 March 2016 for therapy services at the mental health clinic at MacDill AFB due to long standing problems with severe depression, anger, severe PTSD symptoms and suspected alcohol abuse. Pt symptoms were connected to the multiple episodes of combat trauma he has experienced throughout his lengthy career as well as experiences of childhood trauma. At the time of his initial intake with this provider and throughout 3 follow up appointments, Pt denied having any current PTSD symptoms stating he had previously received PTSD treatment, specifically EMDR, with a civilian psychiatrist in Tampa, Florida named Dr. Carrie Elk in approximately the 2013 to 2015 time frame. He stated that this treatment completely healed his PTSD making him now able to easily discuss his combat symptoms and relieving the "pressure at the base of my skull" which Pt connected to his anxiety. However, AHLTA records note that Pt was living in Washington D.C. at the time of the treatment with Dr. Elk and Pt would fly down to Tampa somewhat irregularly for treatment. Additionally, AHLTA records indicate that Pt refused residential treatment for his PTSD symptoms while at the Pentagon and continued to maintain he would complete his treatment in Tampa, Florida. Additionally, AHLTA notes document that Pt experienced a suicidal gesture during his treatment with Dr. Elk, while he was living in Washington D.C., whereby he became distraught, had suicidal ideation, consumed alcohol and drove aimlessly nearby a bridge after being asked to give a speech about his treatment at the Elk Institute in a public forum. Pt denied to this provider that this incident was of concern and he denied any problems with alcohol stating that he drinks to relieve stress but does not believe his alcohol consumption is an issue. Pt declined to complete PTSD treatment with this provider at this time stating he had some marital concerns and anger but no lingering issues that therapy could help address. Instead, Pt stated plans to deploy to Afghanistan despite being on a restricted deployment code for his PTSD and other health issues. Pt was deployed to Afghanistan in May 2016 before being sent home early in March 2017 due to a pending legal investigation.

HISTORY OF PRESENT ILLNESS:
    Pt has a lengthy history of treatment for his PTSD symptoms, depression and anger at the MacDill mental health clinic. Pt was first seen for treatment in February 2009 by Dr. David Barry, Licensed Clinical Psychologist and diagnosed with Adjustment Disorder with Anxiety and Depressed Mood with a rule out of PTSD. Pt continued to see Dr. Barry throughout 2009 and was referred to marriage counseling and psychiatry in October 2009, where his diagnoses were changed to PTSD and

Major Depressive Disorder by psychiatrist Dr. Zachray Goral. Pt was then transferred to a new psychiatrist Dr. Altragracia Otero who continued to work with him until March 2017 and her retirement from the mental health clinic. In December 2009, Dr. Otero noted that Pt continued to meet criteria for PTSD and Major Depression and was still experiencing morbid ideation and significant PTSD symptoms. In February 2010, after a year of treatment with Dr. Barry, Dr. Barry reported that Pt still was not interested in working directly on his PTSD symptoms in therapy despite having active symptoms and was mainly avoidant of direct trauma therapy. Dr. Otero noted that Pt has a history of modifying his own medication without doctor's advice and she noted issues in general with medication compliance. In December 2010, Pt agreed to complete cognitive-processing therapy with Dr. Barry but unfortunately stopped his treatment after 6 sessions, self-reporting improvement, but demonstrated continued struggles with anxiety and anger. After the abbreviated CPT treatment, Pt continued to deny significant PTSD symptoms to Dr. Barry and Dr. Otero, stating that he feels "overwhelmed" at times but mainly attributing this to family, health and work stress. Dr. Barry noted periodically concerns with Pt's alcohol use but did not initiate a referral to ADAPT.

Pt continued to work somewhat sporadically with Dr. Barry on therapy issues primarily connected to his marital stressors throughout 2010 and 2011, until Dr. Barry PCS'd and Pt was transferred to another clinician Dr. Emily Rougier, Licensed Clinical Psychologist in May 2012. Pt was given the Clinically Administered PTSD Scale for the DSM-IV and the diagnosis of PTSD was confirmed with a recommendation for Pt to again attempt cognitive processing therapy with Dr. Rougier. Pt completed only 2 sessions of CPT with Dr. Rougier before noting that he would be going on an extended TDY and PCS'ing in the next few weeks. Pt and Dr. Rougier decided to do an accelerated version of CPT to complete his therapy resulting in rapidly progressing through the remaining CPT sessions in an approximately one and a half month time frame. While Pt reported significant improvement with this accelerated CPT treatment, sometimes completing two modules in only one 60 minute session, the efficacy of this is questionable given Pt's chronic symptom history and tendency to minimize symptoms dating back over 3 years at the time of this treatment.

Following completion of his CPT treatment and relocating to the Pentagon, Pt requested a referral to see a civilian off-base provider, Dr. Carrie Elk for PTSD treatment, despite Dr. Elk being based in Tampa, Florida. Pt continued to remain in contact with Dr. Otero throughout his time at the Pentagon and noted to her that he was seeing Dr. Elk in Tampa for EMDR treatment by "flying back and forth" throughout 2013 and 2014. In 2014, Dr. Elk and Pt contacted Dr. Otero to note Pt experiencing "passive suicidal ideation" which Dr. Elk did not believe "warranted hospitalization." Pt also noted to Dr. Otero having discontinued his psychotropic medication due to thinking it was no longer needed to manage his symptoms. Pt agreed to restart medication with Dr. Otero in February 2014, and he noted that he still did not have a local mental health provider in Washington D.C. In April 2014, Pt starting seeing a mental health provider in D.C, Jennifer Marshall, LCSW who noted Pt had again discontinued his psychotropic medication and was again reporting active PTSD symptoms. Ms. Marshall also noted concerns about Pt's use of alcohol to manage stress and her notes indicate her considering referring him for military based alcohol/drug treatment. Ms. Marshall noted difficulty engaging Pt in regular treatment due to his concerns about "abandoning Dr. Elk" with Ms. Marshall and psychiatrist Dr. Willis Leavitt, noting that Pt appeared to have a highly enmeshed relationship with Dr. Elk. Pt declined to engage in trauma focused therapy while in D.C. instead focusing on reducing his alcohol consumption and medication management. In a 4 February 2015 AHLTA note, Ms. Marshall noted concerns with the number of Pt's missed appointments and generally avoidance of treatment, which was confirmed by Dr. Elk who also expressed concerns about his "depression and alcohol use."

In April 2015, Pt was referred to the ADAPT program for treatment and continued in therapy with Ms. Marshall. He continued to decline treatment for his PTSD symptoms and to struggle with taking his psychotropic medication as prescribed. Pt did not end up being evaluated by ADAPT due to a pending PCS to Korea set for the November 2015 time frame. However, Pt did not end up PCS'ing to

Korea due to concerns about his physical and mental health needs and the PCS being apparently rejected. Instead, Pt was PCS'd back to MacDill AFB and he re-engaged with Dr. Otero for psychotropic medication in March 2016. Pt then was seen by this provider for only 3 sessions before deploying to Afghanistan.

Pt was returned early from Afghanistan due to a legal investigation and he returned to the MacDill AFB mental health clinic on 13 March 2017, following being discharged from Memorial Hospital's inpatient psychiatric unit. Pt reported having gone to Memorial Hospital on 10 March with suicidal ideation and he noted having stayed over the weekend with severe depressive symptoms connected to his ongoing legal situation. Pt denied current suicidal ideation but he noted continued severe PTSD symptoms, using alcohol to manage his stress and generally feeling "hopeless, ashamed and a loss of dignity." Pt agreed to voluntarily attend a partial hospitalization program at Memorial Hospital and he has been at this treatment program now for approximately 3 weeks. Pt has struggled with engaging effectively with the program tending to complain about the services, having concerns about engaging in treatment with enlisted military members and generally being avoidant of discussing his concerns. Pt has agreed to attend a residential treatment program for PTSD and alcohol treatment as soon as this can be arranged. Overall, Pt has a lengthy history of avoiding alcohol abuse counseling and engaging with evidence based PTSD treatments. He also has a history of repeated suicidal ideation, suicidal gestures and poor adherence to psychotropic medication.

PSYCHIATRIC PAST HISTORY:
Prior to 2009, Pt denied any history of contact with mental health services. A search of AHLTA records also confirm no prior documented mental health contact.

FAMILY HISTORY OF PSYCHIATRIC ILLNESS:
Pt reported that no one in his immediate family has been diagnosed with any mental health issues but that some of his family members struggled with substance abuse issues.

PAST MEDICAL HISTORY:
*See medical chart*

CURRENT MEDICATIONS:


SUBSTANCE USE/ADAPT:
Pt likely has long standing issues with alcohol use as a method for managing his stress and PTSD symptoms. While concerns with Pt's alcohol use have been reported since 2009, he has not engaged in any formal assessment nor treatment for these issues to date. Pt was formally referred to ADAPT in April 2015 by his providers at the Pentagon but did not end up being evaluated due to PCS'ing.

PSYCHOSOCIAL HISTORY:
Pt currently resides in a home off base with his spouse of 10 years and 3 year old son. Pt noted having chronic problems with marital stressors dating back to at least 2009. Pt reported being a victim of childhood abuse but declined to elaborate on the nature and extent of the abuse. He noted that he has not felt able to share this information in therapy and that he has not received any treatment for his childhood abuse. He reported growing up in Texas and that his biological parents were poor caregivers along with being abusive and neglectful.

MILITARY HISTORY:
Pt has served for approximately 28 years in the Air Force with the majority of his work having been with Special Forces in the areas of intelligence and collections. Pt was at the Pentagon during the 9/11 attacks and he has deployed on 6 occasions for a total of 72 months or 6 years. Pt noted greatly

enjoying his job and often requesting deployments. He did note a lengthy history of exposure to combat trauma including losing many fellow service members and having guilt and remorse about his own actions and experiences during traumatic events. Pt attributes the beginning of his mental health concerns to his combat experiences noting that prior to his experiences on 9/11 and afterwards he was able to manage his childhood trauma issues without therapy and/or medications.

Pt denied any history of LOR, LOC or UCMJ violations prior to his current legal investigation. Pt also noted that he perceives his current legal issues as an unintended accident and miscommunication and is somewhat hopeful that the issue will be resolved. Pt did note occupational stressors at Central Command during his 5 years at MacDill noting his frustration with what he perceived as bureaucratic processes and administrative issues. Pt also expressed frustration with having his PCS to Korea denied stating he felt the treatment he received to be unfair and misleading. Pt currently is unable to work at Central Command as his security clearance has been suspended pending his legal investigation.

PHYSICAL EXAM:
n/a

MENTAL STATUS EXAMINATION:
Pt did present in some distress being somewhat tearful with flat affect during his acute appointment on 14 March 2017 following his discharge from Memorial Hospital. Pt was appropriately groomed in civilian clothing. Pt was alert and oriented x4. Eye contact was appropriate. No abnormalities in attention or concentration were noted. No abnormalities of movement present; psychomotor activity was normal. Speech was fluent and regular in rhythm, rate, volume, and tone. Thought processes were linear, logical, and goal-directed. There was no evidence of thought disorder. No auditory or visual hallucinations. Long and short term memory appeared to be intact. Insight, judgment, and impulse control were deemed to be within normal limits. Reported mood was "hopeless about the future." Affect was blunted but appropriate to thought content and conversation. Pt endorsed *past* suicidal ideation *in plan, intent, and preparatory behavior* both verbally and on the PHQ-9 (or other measure). Pt denied current suicidal and past/current homicidal ideation in plan, intent and preparatory behavior.

PSYCHOLOGICAL TESTING:
Pt was administered the Clinically Administered PTSD Scale for the DSM-IV (CAPS) by Dr. Emily Rougier, Clinical psychologist in 2012, with the diagnosis of PTSD being confirmed.

CONSULTATIONS:
*n/a*
LABORATORY/RADIOLOGICAL DATA:
*n/a*

HOSPITAL/OUTPATIENT TREATMENT COURSE:
1) February 2009 to August 2012, Pt completed a lengthy course of weekly to bi-weekly outpatient therapy with Dr Barry and Dr Rougier at the Macdill AFB mental health clinic. Pt mostly avoided engaging in any high quality, evidence based PTSD treatment accept for completing 10 out of 12 sessions of an accelerated version of CPT in an approximately 6 week time frame in 2012. Pt engaged in medication management with Dr. Otero throughout this 3 year period with noted difficulties with medication compliance tending to titrate his own dosages and abruptly stop medication use.
2) From 2013 through 2015, Pt reported engaging in outpatient PTSD treatment, EMDR, with Dr. Carrie Elk, a civilian provider in Tampa Florida. Pt resided in Washington D.C. at the time of the treatment and stated flying back every 3 to 4 weeks for a session. AHLTA notes document that Pt experienced a suicidal gesture and suicidal ideation during his treatment

with Dr. Elk and that he stopped using psychotropic medication. Pt's providers in the Washington D.C. were concerned about Pt having an enmeshed relationship with Dr. Elk.
3) April 2014 to November 2015, Pt was seen by Ms. Jennifer Marshall, LCSW and Dr. Willis Leavitt, psychiatrist in Washington D.C. Pt declines to engage in focused PTSD treatment with Ms. Marshall noting he feels he is abandoning Dr. Elk. Pt struggles with alcohol use concerns and medication adherence and frequently cancels or does not keep appointments. Pt was referred for an evaluation by ADAPT in April 2015, but this referral was never followed up on as Pt was set to PCS to Korea in a few months' time.
4) Pt's PCS to Korea was denied and Pt is PCS'd to MacDill AFB. March 2016, Pt returned to Macdill mental health clinic and saw Dr. Otero and Dr. Lieber for a few sessions before deploying to Afghanistan in May 2016.
5) March 2017, Pt is returned home early from Afghanistan due to a pending legal investigation. Pt self admits to Memorial Hospital inpatient psychiatric unit with suicidal ideation on 10 March and is treated over the weekend discharging on 13 March.
6) 14 March, Pt starts attending Memorial Hospital partial hospitalization program. Pt's attended the partial hospitalization program for approximately 2 and half weeks.
7) 4 April, Pt is starting at Emerald Coast Behavioral Hospital for treatment of his PTSD and evaluation for a possible Alcohol Use Disorder. Pt will attend this program for the next 4 to 6 weeks.

DIAGNOSES:

PTSD, *Unfitting*

Major Depressive Disorder, Recurrent, Moderate to Severe, *Unfitting*

r/o: Alcohol Use Disorder, *not unsuiting*

PREMORBID PREDISPOSITION:

Pt has struggled in his ability to adapt to the rigors of military life since starting in treatment for his PTSD symptoms and marital distress back in 2009. Pt has been able to continue being a productive worker but appears to mainly manage his significant concerns with anger and anxiety by avoidance and requesting constant changes in assignment as well as deployments. While Pt's work performance has not suffered greatly, his family life has significantly suffered as Pt has noted a long standing pattern of chronic marital issues along with Pt frequently requesting assignments that place him at a large distance from his home. Pt has struggled with chronic feelings of guilt, low self-efficacy and intense sadness and anger, which has held him back from addressing the issues in his family life. While Pt has at times made gains with addressing current life stressors he has not made any progress with addressing the traumatic events of his many combat experiences as well as pre-existing childhood issues. Additionally, Pt likely has a lengthy history of unaddressed alcohol use problems as concerns about Pt using alcohol to manage his anxiety, anger stress has been stated in his mental health notes since 2009. It is likely that Pt will continue to struggle with intense depression and anxiety, especially as he is now unable to rely on avoidance, moving and deployments, due to his current legal situation, as his way of avoiding and managing his symptoms.

IMPAIRMENT FOR MILITARY SERVICE:

It is recommended that Pt is not fit for duty due to his need for consistent mental health support and his chronic concerns with suicidal ideation. Pt's level of impairment is *severe* and is likely to negatively

impact his occupational functioning due to his need to be constantly changing locations and/or deployed to avoid addressing his anxiety/anger symptoms.

SOCIAL AND INDUSTRIAL IMPAIRMENT:
Pt's level of impairment for non-military work is *severe*, as he has struggled with being able to adequately manage his difficulties with anxiety and anger without relying on alcohol or the ability to escape his current environment. Pt tends to isolate from his family and focus primarily on his preferred type of work (i.e. being deployed) as a coping strategy. He struggles with being unable to be in a deployed setting or engaging in the type of mission support he views as critical. Pt would likely struggle in work environments that involve him needing to stay in one primary location and follow the direction of a leader he viewed as inferior to himself. Pt's level of functioning is improved if he continues to access mental health services and take his medication as prescribed.

LINE OF DUTY DETERMINATION
    Yes

DUTY RESTRICTION REPORT (AF Form 469)
Pt was placed on a Limitation Code C-2, following a prior medical evaluation board in approximately the 2012 time frame in which Pt was returned to duty. Pt's limitations are for the conditions of PTSD and obstructive sleep apnea. Pt is required to be assigned or deployed to CONUS, Hawaii or Alaska installations with fixed medical treatment facilities and specialty treatment or referral capability.

PROGNOSIS AND RECOMMENDATIONS:
    Pt is competent for pay and records and is not currently a danger to herself or others. Pt has struggled with managing his PTSD and depressive symptoms over an 8 year period and has had several periods of intense suicidal ideation including one suicidal gesture. Pt tends to rely on unhealthy strategies to cope with his symptoms including alcohol use, avoidance, modifying his own medication regiment and moving to a new work location. Pt will likely require a fairly intense level of services including focused PTSD treatment in a high quality residential setting followed up by weekly to biweekly outpatient mental health appointments for a lengthy period of time possibly exceeding a year. Pt's current level of



CTR USAF, 6MDOS/SGOW, MacDill AFB      6MDOS/SGOW, MacDill AFB

\*\*\*\*\*\*\*DATE SIGNED\*\*\*\*\*\*\*\*
05APR17

# MEDICAL BOARD REPORT

*(This form is subject to the Privacy Act of 1974 - Use Blanket PAS - DD Form 2005)*

| Field | Value |
|---|---|
| 1. INSTALLATION AT WHICH CONVENED | 6 MDG MACDILL AFB FL |
| 2. DATE CONVENED | 20171026 |
| 3. NAME (Last, First, Middle Initial) | BIRCHUM, ROBERT, L |
| 4. GRADE | LT COL |
| 5. SSN | -7319 |
| 6. COMPONENT | USAF/AD |
| 7. DEPT OR SERVICE | DoD |
| 8. ORGANIZATION | AFELM USCENTCOM |
| 9. SEX | M |
| 10. DATE OF BIRTH (Yr, Mo, day) | 19680609 |
| 11. AGE | 49 |
| 12. SEPARATION/RETIREMENT DATE | INDEF |
| 13. HOSPITAL INITIALLY ADMITTED | |
| 14. TRANSFERRED FROM | |
| 15. HOME ADDRESS | |
| 16. MILITARY OCCUPATIONAL SPECIALTIES - TITLE | INTELLIGENCE STAFF |
| CODE | 14N4 |
| 17. TOTAL YEARS MILITARY SERVICE - ACTIVE | 28 |
| INACTIVE | |
| 18. DATE ENTERED AD CURRENT TOUR | 19881028 |
| 19. AERO RATING | |
| 20. ON FLYING STATUS ON ADMISSION | NO (✓) |
| 21. DATE RELIEVED FROM FLYING STATUS | |

**22. BY DIRECTION OF THE APPOINTING AUTHORITY, THE BOARD CONVENED TO CONSIDER THE CASE OF THE ABOVE NAMED MEMBER.**

A. UNDER PROVISIONS OF THE FOLLOWING DIRECTIVES:
- [✓] AFI 44-113 AND 48-123
- [ ] MANUAL FOR COURTS-MARTIAL
- [✓] OTHER (Specify) AFI41-210 & AFI36-3212

B. FOR THE PURPOSE OF:
- [✓] CONTINUED ACTIVE DUTY
- [ ] SEPARATION/RETIREMENT
- [ ] EPTS DEFECTS
- [ ] OTHER (Specify)

## 23. DIAGNOSIS AND FINDINGS

AFTER CONSIDERATION OF CLINICAL RECORDS, LABORATORY FINDINGS, AND PHYSICAL EXAMINATION, THE BOARD ESTABLISHES THE FOLLOWING DIAGNOSIS: *(List all diagnoses, in accordance with applicable directives, which contribute or may contribute to make the qualifications of the individual for worldwide duty questionable. Include any competency determinations. (DFAS-DE MANUAL 177-173).*

| A | B APPROXIMATE DATE OF ORIGIN | INCURRED WHILE ENTITLED TO BASIC PAY - YES (C) | NO (D) | EXISTED PRIOR TO SERVICE - YES (E) | NO (F) | PERMANENTLY AGGRAVATED BY SERVICE - YES (G) | NO (H) |
|---|---|---|---|---|---|---|---|
| POST TRAUMATIC STRESS DISORDER | 20090201 | X | | | X | | |
| MAJOR DEPRESSIVE DISORDER, RECURRENT, MODERATE TO SEVERE | 20091001 | X | | | X | | |

LOD: YES

## 24. SANITY DETERMINATION (To be completed for sanity board cases only.) (Manual for Courts-Martial)

A. IS THIS A DISEASE OR DEFECT OF THE MIND AS DISTINGUISHED FROM A CHARACTER DEFECT? [ ] [ ]
B. DID THE ACCUSED, AT THE TIME OF THE ALLEGED OFFENSE AND AS A RESULT OF MENTAL DISEASE OR DEFECT, LACK SUBSTANTIAL CAPACITY TO APPRECIATE THE CRIMINALITY OF THIS CONDUCT? [ ] [ ]
C. DID THE ACCUSED, AT THE TIME OF THE ALLEGED OFFENSE AND AS A RESULT OF MENTAL DISEASE OR DEFECT, LACK SUBSTANTIAL CAPACITY TO CONFORM HIS/HER CONDUCT TO THE REQUIREMENTS OF THE LAW? [ ] [ ]
D. DID THE ACCUSED HAVE THE MENTAL CAPACITY TO FORM THE SPECIFIC INTENT OR REQUIRED STATE OF MIND? [ ] [ ]

## 25. ACTION RECOMMENDED BY BOARD (or directed by higher authority)

Refer to IPEB

## 26. BOARD MEMBERS

| TYPED NAME, GRADE, ARM OF SERVICE | SIGNATURE |
|---|---|
| PRESIDENT — , COL, USAF, MC, SFS, SGP | |
| MEMBER — COL, USAF, MC, SFS, SGH | |
| MEMBER — MAJ, USAF, MC | |

27. MINORITY REPORT ON REVERSE: [ ] YES [ ] NO

## 28. HOSPITAL COMMANDER OR DESIGNEE

A. DATE REVIEWED:
B. BOARD RECOMMENDATION: [ ] APPROVED [ ] DISAPPROVED
C. TYPED NAME, GRADE, SERVICE: IAW AFI41-210 COMMANDER SIGNATURE NO LONGER REQUIRED
D. SIGNATURE:

## 29. I HAVE BEEN INFORMED OF THE FINDINGS AND RECOMMENDATIONS OF THE MEDICAL BOARD.

A. DATE:
B. SIGNATURE OF MEMBER: BIRCHUM.ROBERT.L.1295 70640
Date: 2017.10.31 12:25:21 -04'00'

C. LETTER OF EXCEPTION ATTACHED: [ ] YES [ ] NO [ ] N/A

¹ If, applicable indicate reason for disapproval on reverse.

AF IMT 618, 19951001, V2     PREVIOUS EDITION IS OBSOLETE.

DEPARTMENT OF THE AIR FORCE
6TH AIR MOBILITY WING (AMC)
MACDILL AIR FORCE BASE, FLORIDA



07 June 2017

MEMORANDUM FOR MEDICAL EVALUATION BOARD

FROM: ███████████████, MAJ, USAF, MC

SUBJECT: Lt Col Robert Birchum, 20/7319

1) In reference to the additional information requested by The Board:

LtCol Birchum's primary mental health diagnosis is the *Posttraumatic Stress Disorder,* which remains *unfitting* based on criteria listed in AFI48-123, MSD, dated 6 Oct 2014. Despite ongoing treatment, the impairment on military service, as well as the SM's social and industrial functioning, remains *severe*.

The diagnosis of *Major Depressive Disorder, recurrent, moderate to* severe is the secondary diagnosis and it also remains *unfitting* based on criteria listed in AFI48-123, MSD, dated 6 Oct 2014. Patient's level of impairment for non-military work is *considerable*.

2) If you have any further questions, please feel free to contact me at DSN ███████ or Comm ███████



Date: 2017.06.07 07:13:08 -04'00'
███████, MAJ, USAF
Staff Psychiatrist
Medical Director Mental Health Clinic
MacDill Air Force Base

MISSION FOCUSED...VALUED AIRMEN

| FORMAL | FINDINGS AND RECOMMENDED DISPOSITION OF USAF PHYSICAL EVALUATION BOARD | DATE: 7-Mar-18 |
|---|---|---|

PRIVACY ACT STATEMENT
AUTHORITY: 10 U.S.C. 8013, Secretary of the Air Force (AF); as implemented by AF Instruction 36-2608 and Executive Orders 9397 (SSN) and 13478.
PRINCIPAL PURPOSE: Military personnel records are used at all levels of AF personnel management for actions/processes related to disability evaluation for separation/retirement or retention.
ROUTINE USES: Records may be disclosed to the Department of Veterans Affairs for research, processing, and adjudication of claims, and providing medical care.
DISCLOSURE: Voluntary. SSN is necessary to ensure positive identification. Refusal to divulge information may delay or halt further processing and may jeopardize entitlement to disability benefits.

| 1. BOARD CONVENED AT JBSA Randolph AFB TX 78150-4708 | 2. EXHIBITS ATTACHED: A-C, G-L | | |
|---|---|---|---|
| 3. MEMBER'S NAME (Last, First, MI) **BIRCHUM, ROBERT L.** | | 4. GRADE **Lt Col** | 5. SSN ▮▮▮▮-7319 |
| 6. COMPONENT: **Regular AF** | 7. 10 USC 1208 SERVICE **29** | 8. APPROVED RETIREMENT/HYT: | |

### 9. FINDINGS CONCERNING INDIVIDUAL CONDITIONS DESCRIBED IN THE RECORDS

A. DIAGNOSIS
B. INCURRED WHILE ENTITLED TO RECEIVE BASIC PAY (Enter "Yes", "No", or "NA" for Not Applicable.)
C. LINE OF DUTY OR PROXIMATE RESULT OF PERFORMING DUTY (Enter "Yes" for in line of duty or proximate result, "No" for not proximate result of performing duty (ARC only), "M" for Not LOD - intentional misconduct, "N" for Not LOD - willful neglect, "A" for Not LOD - incurred during a period of unauthorized absence, or "NA" for not applicable)
D. DISABILITY COMPENSATION RATING
E. VETERANS ADMINISTRATION SCHEDULE FOR RATING DISABILITIES (VASRD) CODE
F. COMBAT RELATED DETERMINATION AS DEFINED IN 26 USC 104 (Enter "A" for direct result of armed conflict, "I" for direct result of instrumentality of war, "S" for duty under conditions simulating war, or "H" for while engaged in hazardous service, or "No" if not combat related.)

| A. DIAGNOSIS | B. | C. | D. | E. | F. |
|---|---|---|---|---|---|
| **CATEGORY I - UNFITTING CONDITIONS:** Post Traumatic Stress Disorder with Major Depressive Disorder, Recurrent, Moderate to Severe *(Combat Related: Yes; Combat Zone: Yes)* | Yes | Yes | 70 | 9434-9411 | A |
| **CATEGORY II - CONDITIONS THAT CAN BE UNFITTING BUT ARE NOT CURRENTLY UNFITTING:** See Note in Section 15 | | | | | |
| **CATEGORY III - CONDITIONS THAT ARE NOT UNFITTING AND NOT COMPENSABLE OR RATABLE:** NONE | | | | | |

| 10. ADDITIONAL FINDINGS | |
|---|---|
| A. MEMBER IS UNFIT BECAUSE OF PHYSICAL DISABILITY | YES |
| B. OVERCOMES THE PRESUMPTION OF FITNESS | N/A |
| C. CONDITION IS PERMANENT/STABLE | NO |
| D. DISABILITY WAS INCURRED IN LINE OF DUTY IN TIME OF WAR OR NATIONAL EMERGENCY OR AFTER 14 SEP 1978 | YES |
| E. DISABILITY WAS INCURRED IN A COMBAT ZONE OR INCURRED DURING THE PERFORMANCE OF DUTY IN COMBAT-RELATED OPERATIONS AS DESIGNATED BY THE SECRETARY OF DEFENSE (NDAA 2008, Sec 1646) | YES |

| 11. COMBINED COMPENSABLE PERCENTAGE **70** | 12. RECOMMENDED DISPOSITION **Temporary Retirement** |
|---|---|
| 13. NAME OF PEB PRESIDENT OR REPRESENTATIVE ▮▮▮▮, Lt Col, USAF | 14. SIGNATURE ▮▮▮▮ |

### CLINICS FOR TDRL EVALUATIONS

| Psychiatry | N/A | N/A | N/A |
|---|---|---|---|

AF Form 356, Dec 14 PREVIOUS VERSION IS OBSOLETE

| FINDINGS AND RECOMMENDED DISPOSITION OF USAF PHYSICAL EVALUATION BOARD | | |
|---|---|---|
| GRADE/NAME:<br>**Lt Col / BIRCHUM, ROBERT L.** | SSN:<br>▮▮▮-▮▮-7319 | DATE:<br>7-Mar-18 |

**15. REMARKS:**

**Contention:** Lt Col Birchum concedes his condition is unfitting, and contends that it should be combat related. In support of this summary request, Lt Col Birchum submits the attached deployment-related award narratives, and officer performance report bullets.

Lt Col Birchum is an Intelligence Officer (14N4) with 29 years of active duty service. Lt Col Birchum was submitted for **Post-Traumatic Stress Disorder (PTSD)** and **Major Depressive Disorder (MDD)**, Recurrent, Moderate to Severe. Lt Col Birchum has been diagnosed with MDD and PTSD since 2009 and has been treated with psychotropic medications, psychotherapy, two inpatient hospitalizations in 2017 and partial hospitalization program in 2017. Lt Col Birchum has long-standing severe depression, anger, severe PTSD symptoms and suspected alcohol abuse. Lt Col Birchum's PTSD is related to multiple deployments in combat zones and related combat action. Per his testimony and that of multiple awards, decorations and supporting documentation, Lt Col Birchum was engaged in daily small arms fire while inserted with Special Operation Air Regiment (SOAR) at various FOBs and testified to receiving frequent small arms fire and other directed fire while transporting insurgents in rotary wing aircraft and returning fire in these situations. Lt Col Birchum also testified to multiple "hard landings" in rotary wing aircraft, in some cases due to damage resulting from ground fire. Lt Col Birchum has a history of repeated suicidal ideation, a suicidal gesture and poor adherence to psychotropic medication. Currently, Lt Col Birchum has severe impairment for military service and has severe social/industrial impairment and will likely require a fairly intense level of services for a lengthy period of time possibly exceeding a year. The AF FORM 469, *Duty Limiting Condition Report*, indicated Lt Col Birchum has the following mobility/duty/fitness restrictions: Assignment Limitation Code-C2 with no running, walking, sit-ups, or push-ups on the Air Force Fitness Assessment (AFFA); no PCS/TDY/mobility; member requires reliable electricity at billeting when deployed. Lt Col Birchum's commander indicated Lt Col Birchum is able to perform his duties in-garrison but does not collaborate well with others and does not recommend retention. The Board finds Lt Col Birchum's medical condition imposes unreasonable requirements on the Air Force to maintain or protect his health; represents a medical risk to the health of Lt Col Birchum with continued service; is subject to sudden and unpredictable exacerbations, recurrences or progression. Thus, the Board finds Lt Col Birchum's conditions are incompatible with the rigors of military service and *unfitting*. **Combat Related:** In accordance with DoDI 1332.18, the Formal Physical Evaluation Board (FPEB) has determined Lt Col Birchum's mental health condition is combat related as it is attributable to direct armed conflict and the special dangers associated with armed conflict. These findings were determined by the FPEB based on the preponderance of the evidence presented in the medical evaluation board case file and Lt Col Birchum's sworn testimony. The FPEB determination is not considered a source document for the approval of any requested entitlement nor is it a guarantee of approval of any entitlement covered under Section 1413a, Title 10, United States Code, Combat-Related Special Compensation (CRSC).

The Formal Physical Evaluation Board (FPEB) finds Lt Col Birchum's PTSD medical condition prevents him from reasonably performing the duties of his office, grade, rank or rating. Therefore, the FPEB recommends Lt Col Birchum be placed on the temporary disability retirement list (TDRL) with a disability rating of 70% IAW the Veterans Administration Schedule for Rating Disabilities (VASRD) guidelines.

*NOTE:* TDRL status is provided not due to instability or of expectation of return to duty but rather IAW VASRD paragraph 4.129 and DODM 1332.18-V1.E4.2. of the VASRD which requires a minimum of 6 months of TDRL following an unfitting determination with diagnosis of PTSD. The Board wants to be sure Lt Col Birchum reaches the highest possible level of physical and mental health. To attain this goal, it is critical Lt Col Birchum maintains close follow-up with all his physicians, adhere to all medical recommendations and bring all medical care documentation (civilian, military and Veterans Administration) to each evaluation.

*NOTE:* The FPEB has considered all other medical conditions rated by the Department of Veterans Affairs related to Lt Col Birchum's military service as required under the Integrated Disability Evaluation System. The Board finds these conditions are currently *not unfitting* for duty separately or collectively.

AF Form 356, Dec 14     PREVIOUS VERSION IS OBSOLETE